IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT JAIMES and BEATA JAIMES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 12 C 3162 |
| | ) | |
| JPMORGAN CHASE BANK, N.A. and | ) | |
| WASHINGTON MUTUAL BANK, F.A. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Robert and Beata Jaimes ("Plaintiffs") have sued Defendants JPMorgan Chase Bank, N.A. ("Chase") and Washington Mutual Bank, F.A. ("WaMu") alleging that Chase fraudulently held itself out as the creditor and servicer of the mortgage debt on Plaintiffs' house and sought and received payments from Plaintiffs when Chase knew that it had no interest in the debt. Plaintiffs bring claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, the Illinois Fair Debt Collection Practices Act, 225 Ill. Comp. Stat. 425 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*, the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*, and common law claims of quiet title and unjust enrichment. Chase moves to dismiss Plaintiffs' claims alleging that it owned Plaintiffs' debt. For the reasons provided herein, the Court grants Chase's motion. Chase is dismissed as a defendant, but Plaintiffs are granted leave to file an amended complaint within twenty-eight (28) days of this Order.

## Facts

The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of resolving this Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d

759, 763 (7th Cir. 2010). On March 26, 2004, Plaintiffs entered into a mortgage loan agreement with WaMu and signed a promissory note ("Note") secured by a mortgage ("Mortgage") for property located at 1759 East Cree Lane, Mount Prospect, Illinois. (Compl. ¶ 1.) On May 1, 2004, WaMu sold and transferred the Note and Mortgage to a mortgage-backed-securities trust, the "WaMu Mortgage Pass-Through Certificates, Series 2004-AR5" ("Trust"). (*Id.* ¶ 15.) Under the terms of the Trust, WaMu retained possession of the notes and mortgages as custodian for the Trust and remained the servicer of the mortgage loans in the Trust. (*Id.* Ex. C, Trust Prospectus Supplement S-12.) On March 30, 2005, the Trust was terminated. (Compl. ¶ 17.)

Beginning on or about September 25, 2008, Chase sent, and Plaintiffs paid, many bills in which Chase asserted that it was the creditor and servicer of Plaintiffs' Note and Mortgage. (Compl. ¶ 1.)

According to public records, which the Court may consider in a motion to dismiss, *see U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991),[1] on September 25, 2008, the federal government's Office of Thrift Supervision closed WaMu and the Federal Deposit Insurance Corporation ("FIDC") was named receiver. (Purchase and Assumption Agreement between JP Morgan Chase Bank, NA and the FDIC ("P&A Agreement") 1.)[2] That same day, Chase and the

---

[1] The Court may also consider public court documents at the motion to dismiss stage without converting a motion to dismiss into a motion for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[2] The P&A Agreement is publicly available on the FDIC's website: www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf. Other courts have taken judicial notice of the P&A Agreement because it is a public record and not the subject of reasonable dispute. *See e.g.*, *Yetiv v. Chase Home Fin. LLC*, No. 4:11-cv-01250, 2012 WL 112597, at *4 n.1 (S.D. Tex. Jan. 11, 2012) (taking judicial notice of the P&A Agreement and collecting cases in which other courts also took judicial notice of the P&A Agreement and its provisions); *Nguyen v. Bank of Am. Nat. Ass'n*, 11-CV-03318, 2011 WL 5574917, at *3-4 (N.D. Cal. Nov. 15, 2011); *McCann v. Quality Loan Service Corp.*, 729 F. Supp. 2d 1238, 1241 (W.D. Wash. 2010); *Molina v. Wash. Mut. Bank*, No. 09-CV-00894, 2010 WL 431439, at *3 (S.D. Cal. Jan. 29, 2010); *Allen v. United Fin. Mortgage Corp.*, 660 F. Supp. 2d 1089, 1093-94 (N.D. Cal. 2009). Additionally, Plaintiffs acknowledge the P&A Agreement in their Response Brief and recognize that the P&A Agreement "transferred

FDIC entered into an agreement pursuant to which Chase purchased "all right, title, and interest of the Receiver in and to all of the assets" of WaMu and its subsidiaries. (*Id.* § 3.1.) The P&A Agreement also stated that Chase "specifically purchases all mortgage servicing rights and obligations of [WaMu]." (*Id.*)

On August 8, 2011, a law firm sent Plaintiffs a letter identified as "an attempt to collect a debt." (*Id.* ¶ 21.) The letter stated that the firm "represents the holder of a Mortgage and Note" for Plaintiffs' house. (Compl., Ex. H, Debt Collection Letter ¶ 3.) The letter also stated that "the current creditor is JP Morgan Chase Bank" and "[t]he current servicer of the loan is JP Morgan Chase Bank." (*Id.* ¶ 4.)

According to public court documents, on August 11, 2011, Chase filed a complaint for foreclosure against Plaintiffs in the Circuit Court of Cook County. *See* Circuit Court of Cook County, County Dep't, Chancery Division, case number 11-CH-28430.

On April 27, 2012, Plaintiffs filed this suit alleging that Chase never acquired an interest in their Note or Mortgage and, therefore, that Chase's attempts to collect payments from them were fraudulent. Chase contends that it owned Plaintiffs' debt and moves to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 9(b).

## **Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. Of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim

---

servicing rights and obligations of WaMu to Chase." (Pl.'s Resp. Opp'n Mot. 5.) Plaintiffs deny, however, that the P&A Agreement transferred rights related to their Note and Mortgage to Chase because, Plaintiffs argue, "WaMu lost all interest in the loan" when the Trust was terminated in March 2005. (*Id.*)

and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Id.*

However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Additionally, Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This heightened pleading standard for claims involving fraud requires a party to plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). The particularity requirement of Rule 9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

## Discussion

### I. Chase's Interest in Plaintiffs' Debt

All of Plaintiffs' claims in their five-count complaint are grounded on their theory that Chase had no interest in their Note or Mortgage.[3] If Chase had an interest in their debt, either

---

[3] In Count I, Plaintiffs allege that Chase violated the Fair Debt Collection Practices Act ("FDCPA"), which imposes civil liability on debt collectors who use misrepresentation in debt collection, 15 U.S.C. §§ 1692e, by seeking and receiving mortgage debt payments from Plaintiffs which "were actually "owed . . . to another,"" and by "knowingly and intentionally communicat[ing] . . . false . . .

4

equitably as servicer or legally as owner, none of Plaintiffs' claims can survive a motion to dismiss.

### A. Transfer to Trust

To support their contention that Chase had no interest in their debt, Plaintiffs allege that after they signed the Note and Mortgage in March 2004 with WaMu, the original mortgagee, WaMu sold the Note and Mortgage to the Trust in May 2004. (Compl. ¶ 15.) Plaintiffs attach to the Complaint a Prospectus Supplement the Trust filed with the Securities and Exchange Commission ("SEC") in May 2004 that describes the assets of the Trust. (*Id.*, Ex. C, Trust Prospectus Supplement S-18.) According to the Prospectus Supplement, the Trust held 725 mortgage loans, each of which had (1) a first payment date between September 2003 and June 2004; (2) an original term to maturity of not more than thirty years; (3) payments due on the first day of each month; and (4) a conventional mortgage loan evidenced by a mortgage note with a fixed interest rate for approximately the first five years after origination and an adjustable interest rate after that. (*Id.*) The Prospectus Supplement also indicates that 19 of the 725 mortgage loans in the Trust were Illinois mortgage loans. (*Id.* S-60.)

---

statements to Mr. and Mrs. Jaimes representing or implying that JPMorgan Chase was and is the servicer of the Note." (Compl. ¶¶ 28-42.) Plaintiffs also allege that Chase violated the FDCPA provisions that prohibit harassment and nondisclosure, §§ 1692d-g, by using "unfair and unconscionable means to collect the alleged debt," by sending "threatening correspondence" to Plaintiffs regarding the debt, and by failing to properly validate the debt. (*Id.*) In Count II, Plaintiffs allege that Chase "falsely asserted that JPMorgan Chase was the "creditor" and "servicer" of the Note and the Mortgage" and that these "false claims" cloud title on their home. (*Id.* ¶¶ 45-50.) In Count III, Plaintiffs allege that Chase was unjustly enriched when it collected debt payments from Plaintiffs because "JPMorgan Chase has no legal interest in the Note or the Mortgage." (*Id.* ¶¶ 51-58.) In Count IV, Plaintiffs allege that Chase violated the Illinois Consumer Fraud and Deceptive Business Practices Act and the Uniform Deceptive Trade Practices Act by fraudulently asserting that it had an interest in Plaintiffs' debt when "they had no rights under the Note or Mortgage." (*Id.* ¶¶ 59-65.) And in count V, Plaintiffs allege that Chase violated the Illinois Fair Debt Collection Practices Act by seeking and receiving payments "that were actually owed to another entity" because "JPMorgan Chase is not a creditor." (*Id.* ¶¶ 66-71.)

Plaintiffs contend that their Note and Mortgage was among the 19 Illinois mortgage loans placed in the Trust. (Compl. ¶ 15.) Plaintiffs admit that the Trust's Prospectus Supplement does not mention their specific loan, property, or any transfer of their Note or Mortgage, but they claim that at this point they do not have access to all of the information that Defendants have, including information about whether their Mortgage was placed in the Trust. (Pls.' Resp. Opp'n. Dismiss ¶ 7.)

At the motion to dismiss stage when the Court must accept as true all well-pleaded facts and draw all possible inferences in the plaintiff's favor, *Tamayo*, 526 F.3d at 1081, Plaintiffs have pled enough facts to make it plausible that their Mortgage was sold to the Trust. The Trust's Prospectus Supplement does not identify any of the specific mortgages that were sold to the Trust; it identifies only the characteristics of the mortgages sold to the Trust. Plaintiffs' Mortgage, attached to the Complaint as Exhibit A, has the characteristics of the mortgages held by the Trust as described in the Prospectus Supplement: the first payment date on Plaintiffs' Mortgage is May 1, 2004; the original term to maturity is thirty years; payments are due on the first of each month; the initial interest rate is 4.250% for the first five years and adjustable after that; and the mortgage originated in Illinois. (Compl. Ex. A, Jaimes Mortgage 1-2.)

But the Court's analysis does not end there. The Seventh Circuit has held that a mortgage servicer may have equitable ownership of a claim against a borrower and, therefore, may, like a mortgage owner, sue the borrower. *CWCapital Asset Management, LLC v. Chi. Properties, LLC*, 610 F.3d 497, 501 (7th Cir. 2010). In *CWCapital*, a mortgage servicer brought suit against the borrower. *Id.* at 499. The mortgage was part of a mortgage-backed security held by a trust. *Id.* at 500. Pursuant to a pooling and servicing agreement ("PSA") signed by the trustee and the servicer, the trust held legal title to the mortgage and the servicer acted as the

trust's collection agent. *Id.* at 500-501. The PSA provided that the servicer "shall . . . have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable." *Id.* at 500. The Seventh Circuit held that this language established that "[t]he securitization trust holds merely the bare legal title; the Pooling and Servicing Agreement delegates what is effectively equitable ownership of the claim . . . to the servicer." *Id.* at 502. The Court also noted that the trustee submitted an affidavit ratifying the servicer's suit against the borrower. *Id.* Consequently, the Seventh Circuit held, the servicer "ha[d] the whip hand" and could bring suit against the borrower. *Id.*

Here, when WaMu sold mortgages and notes to the Trust, WaMu relinquished legal title to those notes and mortgages. (Trust Prospectus Supplement S-17.) ("The mortgage pool will be the primary asset of the Trust. The Trust will own the right to receive all payments of principal and interest on the mortgage loans due after May 1, 2004.") WaMu remained, however, the servicer of the mortgages and notes in the Trust. (Compl. ¶ 15.) As servicer, WaMu's duties included "collection and remittance of principal and interest payments, administration of mortgage escrow accounts, collection of insurance claims and, if necessary, foreclosure." (Trust Prospectus 24-24.) Thus, WaMu retained equitable ownership of the mortgages in the Trust and could collect payments from borrowers whose mortgages were in the Trust.

As a result, if Plaintiffs' Note and Mortgage were transferred to the Trust, as Plaintiffs contend, Chase would still have an interest in Plaintiffs' debt if WaMu had remained the servicer of the Trust until September 25, 2008, when WaMu closed and Chase entered into a P&A Agreement pursuant to which Chase purchased WaMu's assets, including Plaintiffs' Note and

7

Mortgage. In such a scenario, Plaintiffs would not have a plausible theory that allows the court to draw the reasonable inference that Chase is liable for the misconduct alleged.

### B. Trust's Termination

Under Plaintiffs' theory, however, whether WaMu had an equitable ownership in Plaintiffs' debt after it was transferred to the Trust is immaterial because Plaintiffs contend that the Trust was terminated on March 30, 2005, and the Trust's assets "were distributed to the certificate-holders of the Trust" such that the certificate-holders "became the only mortgagees, the only owners and legal holders of the Note and the Mortgage." (Compl. ¶¶ 17-18.) As a result, Plaintiffs argue, "WaMu lost all interest in the loan" and neither WaMu nor any of its subsidiaries, parents, or successors had any authority to collect mortgage payments, assign the Note or Mortgage, or foreclose. (*Id.* ¶ 19, Pl.'s Resp. Opp'n Mot. ¶ 12.)

This is where Plaintiffs' theory breaks down. Because Plaintiffs argue that "WaMu lost all interest in the loan" at the Trust's termination, they necessarily argue that WaMu lost its status as the loan's servicer. But Plaintiffs do not argue that a different loan servicer was, or should have been, servicing their debt after the Trust's termination. This is not facially plausible.

First, a trust's termination does not terminate the payment obligations on the mortgages in the trust. A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgage loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust. *See Pagano v. One West Bank, F.S.B.*, No. 11-00192, 2012 WL 74034, at *5 n.6 (D. Haw. Jan. 10, 2012) ("Courts have rejected theories that securitization alters the relationship or rights of the original parties"); *Reyes v. GMAC Mortg. LLC*, No. 2:11-CV-100, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011) ("securitization "merely creates a 'separate

contract, distinct from [p]laintiffs['] debt obligations" under the note and does not change the relationship of the parties in any way") (citing *Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.*, No. 2:10-cv-375, 2010 WL 4788209, at *4 (D. Utah Nov. 16, 2010)); *Upperman v. Deutsche Bank Nat'l Trust Co.*, No. 1:10-CV-149, 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) ("[t]here is no authority . . . that the mere existence of a pooling and servicing agreement or investment trust can relieve borrowers of their obligations to perform under a duly executed promissory note and deed of trust.")

Plaintiffs' own Mortgage confirms this. Plaintiffs' Mortgage provides that the "Lender may transfer this Note" and that "the Note . . . can be sold one or more times without prior notice to Borrower." (Compl. Ex. B, Jaimes Mortgage ¶ 20.) The Mortgage further provides that such a sale "might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note." (*Id.*) The Mortgage never states that upon securitization or transfer or a change in servicer that the borrowers' payment obligations disappear. Rather, the Mortgage provides that the "Borrower has promised to pay this debt . . . in full," regardless of who owns or services the loan. (*Id.* 1.) It is reasonable, therefore, for the Court to infer, even under Plaintiffs' theory, that, upon the Trust's termination, the servicing rights on Plaintiffs' debt remained with WaMu. WaMu was the original servicer, the servicer under the Trust, and Plaintiffs fail to allege that anyone other than WaMu was the servicer of their debt after the Trust's termination.

Second, in September 2008, Chase assumed, through the P&A Agreement, "all right, title, and interest . . . in and to all of the assets" of WaMu and its subsidiaries, including "all mortgage servicing rights and obligations of [WaMu]." (P&A Agreement § 3.1.) At that same time, Chase began sending Plaintiffs bills for their Mortgage, which Plaintiffs paid. (Compl.

9

¶ 1.) Plaintiffs do not argue that they were billed twice for the same loan payment obligation beginning in September 2008, nor do they contend that Chase failed to credit them for the payments they made to Chase after Chase billed them. *See Sipe v. Countrywide Bank*, No. CV-F-09-798, 2010 WL 2773253, at *14 (E.D. Cal. July 13, 2010) (rejecting the claim that defendant misrepresented it had the right to collect payments on pooled mortgages, reasoning that "Plaintiff agreed to make monthly payments pursuant to the terms of the promissory note and deed of trust when he obtained the loan . . . Whether or not [defendant] is legally entitled to service Plaintiff's [loan] does not harm Plaintiff in the absence of allegations that Plaintiff was also making loan payments to a third party.") Thus, again, even under Plaintiffs' theory, it is reasonable for the Court to infer that the servicing rights on Plaintiffs' debt transferred from WaMu to Chase pursuant to the P&A Agreement in September 2008.

In short, it is insufficient for Plaintiffs to plead that the Trust's termination destroyed WaMu's servicing rights and that Chase fraudulently serviced the debt beginning in September 2008 without offering any allegation as to who became the servicer of their debt upon the Trust's termination. Plaintiffs' theory that their loan obligations terminated when the Trust was terminated because the servicing rights on their debt were not sold or transferred to another entity does not provide the Court with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, Plaintiffs' theory fails to provide the Court with "the who, what, when, where, and how," of Chase's fraud as required by Rule 9(b). Fed. R. Civ. P. 9(b); *Rolls-Royce Corp.*, 570 F.3d at 853.

Because Plaintiffs have failed to plead factual content that allows the Court to draw a reasonable inference that Chase never had an interest in their debt, and all of Plaintiffs' claims against Chase are predicated on that theory, Plaintiffs' claims against Chase are dismissed.[4]

## II. Leave to Amend

In its Motion to Dismiss, Chase contends that Plaintiffs should not be given leave to amend their complaint because any amendments would be futile. (Def.'s Mot. Dismiss 6-7.) Plaintiffs have not moved for leave to amend their complaint, and Plaintiffs stated in their Response Brief that they "do not believe that any amendment will be necessary." (Pls.' Resp. Opp'n Mot. 4.)

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Given this standard, it would be premature for the Court to bar Plaintiffs from amending their complaint at this stage of the litigation. Plaintiffs have not yet moved to amend their complaint, and the Court cannot conclude at this time that all possible amendments would be futile. Thus, Defendant's request to bar Plaintiffs from amending their complaint is denied.

The Court reminds Plaintiffs, however, that Rule 11 prohibits parties and attorneys from bringing claims for an improper purpose, such as to harass cause an unnecessary delay. Fed. R.

---

[4] Because Plaintiffs' claims against Chase fail for the reasons stated, the Court need not address Chase's argument that, as a bank, the FCDPA and ICAA are not applicable to Chase.

11

Civ. P. 11(b)(1). The Court also notes that other courts have found similar claims to be baseless and sanctionable. *See*, *e.g.*, *Nguyen*, 2011 WL 5574917, at *6 (ordering Plaintiff's counsel to show cause as to why he should not be sanctioned under Rule 11 for bringing repeated actions alleging Chase had no interest in Plaintiff's debt for an improper purpose and stating that "the Court finds that the complaint in this case has been filed for the purpose of causing undue delay to avoid what appears to be a proper foreclosure sale. To allow Plaintiff yet another bite at the apple at this point would unduly prejudice the Defendants . . . Therefore, the Court finds that any amendment would likely be futile.") If Plaintiffs seek leave to amend their complaint, they must do so within twenty-eight (28) days of this order.

## Conclusion

For the reasons herein, the Court grants Chase's motion to dismiss [20]. Plaintiffs are granted leave to file an amended complaint within twenty-eight (28) days of this Order.

**SO ORDERED**     **ENTER: 2/25/13**

_____
**JOHN Z. LEE**
**U.S. District Judge**